I am here this morning on behalf of Derrick Trawick who appeals his judgment and conviction and sentence in the Northern District of Iowa following his indictment for aiding and abetting the distribution of a controlled substance, heroin, resulting in physical injury to another and having it occur in proximity of a protected location. I'd like to focus my argument this morning on the jury misconduct issue that I've raised in the brief. Mr. Trawick, a black man, was accused of and convicted of distributing controlled substance or aiding and abetting the distribution of a controlled substance to a white man and woman resulting in the physical injury and near death of the white woman. The essence of the evidence against him is that he arranged for the distribution of this controlled substance to this young woman and young man, that he arranged for the parties to rendezvous at a gas station, where arrangements were made for the young man and woman to follow Mr. Trawick and his companion, later identified as Benny, to Mr. Trawick's apartment where Mr. Trawick went back into his apartment, Benny came out of the apartment, went to the Trawick car, got something out of the car, then went to the car where the young man and young woman were stationed nearby, distributed the controlled substance to this young man and young woman. Incidentally, this young man who delivered the controlled substance to the couple was identified as colored. On the eve of the second day of trial, one of the jurors reported to the clerk of court that she had heard some definitely concerning comments made by another juror in the jury room or outside the jury room during a break in the second morning of trial. The juror was identified as a law clerk of a Iowa City law firm. She reported this instance to the clerk and then on the morning of the third day of trial, the district court decided to inquire into this to find out what had happened, what was said, and what its effect might be on the other jurors. The essence of what the court and the parties learned was that on the morning of the third day of trial, one of the jurors made a comment in the jury room or outside the jury room during the break to the effect that I'm not a racist, but he also made some comments about a television jury trial program where one of the participants was a black man. He also made grumblings about the fact that Dubuque, Iowa had changed a lot and those people from Chicago were making it a different place than he remembered as a child. In addition to the comments about I'm not a racist, but it was also reported that the juror was grumbling in the jury box during the presentation of evidence. He was saying things to the effect of can't this fucking go faster? What's going on? He particularly was grumbling whenever the defense was making some questions during the course of trial. So the defense alone asked him if he had made these comments and he said he hadn't. Nonetheless, as a precaution, the district court excused him from jury service and decided that the remaining jurors should be examined individually. Before they were examined individually, the entire jury panel, the remaining jury panel was brought in and had been told that this juror had been dismissed. Did the defense request that the juror be dismissed? Beg your pardon? Did the defense ask that the juror be dismissed? I think the judge made that decision on its own, but it was agreed upon by both the defense and the prosecution. So the other jurors were told they were going to be examined individually about what they heard in the jury room. So they were brought in one by one, asked whether they had heard any comments about Steve Harvey in their TV program or comments about Dubuque. Of the jurors that were examined, eight had heard comments about I'm not a racist, but or words to that effect. In addition, there were at least four or five jurors who had heard grumbling in the jury box. And every time an exhibit was offered, there was repetitive examination about an exhibit the juror was grumbling about. For fuck's sake, can we move this thing along? His impatience was pretty obvious to the people that were seated around him. So after the jurors were examined, all of whom said that they could be fair and impartial, we moved for a mistrial, claiming that Mr. Trawick's right to a fair and impartial jury had been seriously compromised and that given the texture of the case and the environment in which this had occurred, there was no way that Mr. Trawick was going to be able to get a fair trial. Mr. Spies, do you think there's any chance that this long colloquy with each of the jurors may have actually highlighted a very important point, which is race is not something that you should base your decision on or even discuss? In other words, I wonder if some of these kinds of comments go on and we never hear about them, you heard about them here, and actually every juror now realized that this was something significant for the court, for the attorneys, and for your client. Can you speak to that and whether you had those thoughts at all? Yeah, that's definitely a concern of mine, not only because we well know that people are reluctant to admit their own bias. We as lawyers and judges have implicit biases that we have to kind of address directly. But the thing that you pointed out, Judge Kelly, was especially concerning the silence of the other jurors. These comments were made on the second day of trial in the morning. There was only one juror who at the end of that day brought this to the attention of the court. And in addition, when they were questioned, the judges were asked, did you say anything to the juror in the jury room? Nobody said anything. He was never confronted. Nobody said, hey, you can't say stuff like that in a case like this or in any kind of a case. Also, if they didn't hear it, why would they bring it up? Why would they bring it up? If they had not heard it. Well, if they hadn't heard it, they certainly wouldn't bring it up. But either of them had heard something and nobody said anything. So to me, that undermines confidence in the ability of the court to ferret out any bias of the remaining jurors. So the answer to your question, Judge, is that first of all, they were alerted that somebody had been discharged. Secondly, the jig was up and the questions were plainly pointed at what they had heard, what they certainly not a knowing answer from the remaining jurors. Are you saying that the district court inquired of each of the jurors what their response was when they heard the statements? Yeah. I mean, plainly the judge wanted to find out what each juror had heard and the impact that it would have on them. I understand that. I comprehend that. I think what you're suggesting, though, is that the court inquired about what they did or what they said in response to that. Did that happen? It wasn't directly asked. Okay. Then how do we know maybe they did say, well, that's improper. You shouldn't be talking about that kind of stuff. How do we know they didn't say that? Because one juror said, volunteered that no one said anything. Okay. And that's, to me, a very concerning fact. Let me ask you, do you have a case where something similar happened and the remaining, the offending juror was removed and the remaining jurors said that it wouldn't influence their outcome or their decision in the case, and yet a mistrial was granted or the denial of one was reversed on appeal? Nothing on all fours, Your Honor. I mean, there are cases where this is found out after a verdict is returned where the court learns that there were racist comments or ethnic comments made during the course of deliberations, but usually that occurs after the trial. So the fact that we were able to determine this in the midst of trial, there was nothing that I found that was on all fours. Excuse me for my Canadian wildfire allergies. So we believe that under these circumstances, the really unique circumstances, little confidence can be placed in the reassurances of the jurors who heard these comments, especially having been alerted that one juror is being dismissed for making racist comments. And certainly the most important audience in this trial, Mr. Treywick, would not have reason to be confident in the reassurances given by the remaining jurors. So those reasons we think that the court abused it. I'm sorry. Would we have to say then that the district court abused its discretion in crediting their answers, that I can be fair and impartial? Or is it more nuanced than that, that even if you say that, given all the other circumstances, no one came forward, this just permeated the jury box in the room, that there's just no way a reasonable juror could do that? Where is that line drawn, at least for our review of the issue? Yeah. You know, I wish we could say that there's absolutely no way that the jury could be fair and that the judge made a mistake in not granting a mistrial. I think it's nuanced. I think you're right, Your Honor. And as much as we would like to believe that jurors obey their oaths and they're honest, we know that it's really, really difficult for people to admit the influences that motivate them. And so I think given the high stakes in a case like this, it was necessary for the court to exercise its discretion and say, look, as much as I'd like to have heard about the other jurors and the impact, the risk was just too great. Well, thank you, Mr. Spies. Mr. Chatham, on behalf of the government. Thank you, Your Honor. May it please the court? Counsel. I will address the same argument that Mr. Spies was addressing as well. I think it's important to separate the facts in this case and compare the facts in this case to the case law that exists of what actually this court would have to do in order to reverse. The Ruiz case, which is cited in the government's brief and discussed, talks about a three part test in determining whether there was a juror bias issue. The first being whether the juror answered the questions of the court dishonestly about their potential bias, not just inaccurately, but dishonestly. Second, that the jury was motivated by partiality, that that juror was actually motivated by partiality. And third, that the true facts, if known, would have supported striking the juror. And so that's the landscape we're looking at here, the legal landscape we're looking at. And what the district court did here was look at Mr. Mueller, who is the juror who was excused, looked at these factors and said, you're not appropriate to serve here. We've learned more information since the jury selection that indicates that you're probably not a good juror in this particular case. Excised Mr. Mueller from the case, and then re-asked all these questions to the remaining jurors to confirm that they were, in fact, still qualified as jurors. And that's what happened here, and there was nothing that came up during that process with each of the remaining jurors who actually deliberated and actually decided the case that gave any indication to the district court that they were not qualified as jurors. And so, ultimately, what happened here is exactly what should happen in a case like this. The district court took caution, excised that juror out before there were any other potential issues with that juror, and questioned the remaining jurors to make sure that there were no bias issues, and there were not. I think it's also important here, when we look at the specific comments that were stated, when we talk about this idea that there was a potential poisoning of the remaining jurors, the comments made by this juror were not related to the case. It was about innocuous things that were happening in the jury room, and he commented on Steve Harvey being on the TV, and made some comments about people from Chicago, and then this comment about, well, I'm not a racist, but. But, Counselor Arndt, those are the attitudes he's bringing into the case, how he's viewing the case, and how he would ultimately deliberate. So, to sort of say there, I can't remember the word you used, completely separate it, sort of hard to accept that it's completely distinct from what task he had as a juror in that particular case. Fully agree with that, Your Honor, and he was excised, and so his views and his thoughts did not end up playing into the jury's ultimate determination. The question here is whether the remaining jurors could be fair and impartial, and whether they were going to be able to abide by their oath, and they all said they would, and the district court found those all to be credible. Did the district court make a credibility determination about Mr. Mueller? About, and the reason I ask that is that I know that the government relies heavily on the district court's conclusion that the remaining jurors were credible in their assertions that they could be fair and impartial. And the counter to that, and again, I don't want to put words in defense counsel's mouth, but that it's really hard to come forward and say, and admit biases, and there's a lot of research on that, and actually just reality. But we do have an example here of one juror, presumably didn't tell the district court the truth when he denied saying them, when you had eight people who said he did. So I'm kind of getting at this idea that, well, we do have an example of a juror not being truthful to the district court, unless I'm wrong about any kind of conclusion that the court made in this case. I don't believe the district court made a direct finding or conclusion that Mr. Mueller was not being truthful in the way he responded to the court's questioning in the separate incident. So I don't know that it's directly, I understand the point the court is making here. But I think we need- It's sort of an exhibit, A, of what defense counsel is trying to point out to the court. Certainly, but the argument there really goes too far, if you take it to its logical conclusion. One of the jurors was asked whether they had heard these types of comments out in the community. And they were like, yeah, this is the type of thing you hear. And do they impact you? And no. And so I think that's ultimately what it comes back down to. These types of statements that were made by the dismissed juror were improper. But sadly, they're not uncommon to hear these types of things in the world. And if someone who has just heard these types of comments is no longer qualified for jury service, then that's a much bigger problem for the jury system generally. What happens and what needs to happen in these cases, and what the case law indicates should happen, is that the court needs to make a searching inquiry into whether the jurors who actually serve hold those beliefs. And here, the court did that and made credibility determinations for the remaining jurors that they were capable of upholding their oath and deliberating fairly. And so there's no abuse of discretion here in the district court's process and conclusions that the remaining jurors were not qualified to serve in this particular case. I think- What are we to make of this idea that none of the other jurors responded to the offending juror? The responses on that were a little bit mixed as far as how they described what had happened. Most of them said essentially it was kind of an offhand comment. They heard him say it. They didn't always hear the context. Most of them were sort of in different parts of the room, and they heard him just sort of raise his voice at one point and sort of say, well, I'm not a racist, but they didn't know any of the rest of those contexts of that. And so they pretty uniformly described this juror as a talker, as someone who was kind of always talking or joking or trying to make comments, and that they essentially were just ignoring him. And that was also important, I think. The people who were closest to him said they didn't respond or react to anything that he said. They were trying to focus on just being there doing their job exactly like you would want a juror to do. So the fact that the others didn't raise this to the court, it's certainly a factor the court had considered at the time in that it was in the record and the judge was looking at all that. But it was also considered in the context of what ultimately happened, the fact that the comments were not directly about the defendant. They weren't about the facts in the case or anything like that. They were more of a belief or a viewpoint held by that individual in different contexts. So again, I don't believe any of this rises to the level of fining each and every other juror, the other 12 jurors, that they were not credible in their testimony or in their statements to the court about their ability to fairly and partially decide the case. The removed juror was replaced with an alternate juror? Correct. And that same juror, that alternate juror was also inquired of and came to the same conclusion, the court came to the same conclusion with respect to his ability. I think it's also important here when we talk about whether this trial was infected with prejudice, is that this defendant received a partial acquittal on kind of the biggest fact in the case, which was whether the injury occurred. So it's not a situation here where this jury was racially charged and fueled and going to give a guilty verdict no matter what because the defendant happened to be black. They considered the evidence and actually found that the government hadn't proved the injury beyond a reasonable doubt and gave them a partial verdict. So that also, I think, goes to whether, in this case, this jury was racially fueled. So beyond that, counsel didn't address the other issues. If there are any questions on the other issues raised in the brief, I'd be happy to answer them. Mr. Trawick was charged with one count, right, of aiding and abetting? Correct. And was that just a detectable amount of heroin and fentanyl? Yes. Is that right? I just wanted to clarify that because then he got a base offense level of 38. What would the base offense level be for the detectable amount? Of fentanyl? I believe 12, except that's on drug quantity alone. Mr. Trawick was a career offender. Yeah, independent. I was looking at the calculation search for the quantity. If there are no further questions, the government will rest on its brief and cede its remaining time and ask that the court affirm the district court in all respects. Thank you, Mr. Chan. Mr. Spies, your rebuttal. Thank you. In response to your question about whether the district court expressed some concern about the candor of Mr. Mueller, it did and expressed some disbelief in his statement that he didn't make any racist comments. The credibility finding of the remaining jurors, I think, is shaken by their silence. As pointed out also in the comments by some of the jurors, Mr. Mueller was making snarky comments, as it was described by the jurors, on the first day of trial, and these snarky comments were heard by others in the jury box. So, again, the fact that this wasn't reported to the clerk of court, it wasn't reported to the judge until the end of the second day, I think, gives rise to the fact that there was some acquiescence by the jurors, and the statements were made by this infected juror. And given the context of the case, the nature of the case, the inherent racial issues that arose, the fact that the guy who delivered the drugs was referred to as colored, you know, these things all generate an environment that I think is really, really. Who used that word? Who referred to Benny as colored? Either Ms. Moorhead or her male companion. Oh, this is in the trial. Yes, right. Not one of the jurors. No, no. So, in other words, the comments that were made by the bad juror did not occur in a vacuum. These comments occurred in the jury room. There was a deafening silence that wasn't reported until the end of the second day. We believe that not only the fact, but the perception of fairness is really, really what drives this case. Certainly, there's no reason to find comfort in the fact that Mr. Traway was found guilty of a lesser offense. We think that the case should have been scuttled at the outset, a new jury brought in to decide the fate of Mr. Traway. Thank you. Thank you, Mr. Spies. The court appreciates both of your appearance and arguments today. The case is submitted and will issue an opinion in due course. Thank you.